In re George H. WATSON and Patricia E. Watson, Debtors.

George H. WATSON, et ux.

v.

CITY NATIONAL BANK, et al.,

Bankruptcy No. LAX 83–19815–SB.

Adv. No. LA 86–2816–SB.

United States Bankruptcy Court, C.D. California.

Oct. 2, 1987.

Mark T. Young of Mayer & Glassman Law Corp., Los Angeles, Cal., for debtors.

Diane Wemple Baxa of Law Offices of James P. Del Guercio, Beverly Hills, Cal., for defendants.

## MEMORANDUM OF DECISION GRANTING SUMMARY JUDGMENT TO DEBTORS

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

This adversary proceeding raises the issue of whether the enforcement of a nondischargeability judgment by levying on the debtors' bank account violates the automatic stay in a case under Chapter 7 of the Bankruptcy Code, where the creditor has not sought relief[1] from stay and the automatic stay is still in force.

All parties have brought summary judgment motions. The Court finds that there is no triable issue as to any material fact, and that this adversary proceeding is ripe for summary judgment.

The Court holds that the enforcement of a nondischargeability judgment violates the automatic stay, where the stay has not terminated and no relief from stay has been obtained. The Court further holds that the two in-house attorneys named as defendants have no liability for this violation, because there is no evidence of any personal responsibility for the violation.

### II. FACTS

George and Patricia Watson filed their petition under Chapter 11 of the Bankruptcy Code on October 26, 1983. The case was subsequently converted to a case under Chapter 7 on March 20, 1984.

City National Bank ("CNB") filed a complaint on March 5, 1984 to determine the dischargeability of a debt owed to it by debtors on an unsecured promissory note. Judge Barry Russell of this Court granted a default judgment on October 17, 1984 in the amount of $30,360.66. The nondischargeability judgment was silent as to any relief from the automatic stay of Bankruptcy Code § 362(a), 11 U.S.C. § 362(a) (1979 & Supp.1987). Debtors have not challenged the propriety of this default judgment in the proceedings before this Court.

On April 23, 1986 CNB obtained a writ of execution on its judgment, without giving notice to debtors,[1] and caused the writ to

---

**1.** A judgment creditor is required to give notice     to a judgment debtor of levy on a writ of execu-

be levied on June 3, 1987 on the debtors' bank account at the Woodland Hills branch of Bank of America. CNB obtained $1,454 pursuant to this writ. Because of the small amount involved, debtors have not challenged the propriety of this writ and levy.

On September 10, 1986 CNB obtained a second writ of execution on its judgment, and caused a levy on the debtors' account at the Woodland Hills branch of First Nationwide Savings on October 8, 1986, thereby causing $8,637.30 to be frozen in the debtors' account. First Nationwide notifed the debtors that their account had been frozen by letter that the debtors received on October 9, 1986.

Debtors filed this adversary proceeding on October 14, 1986, seeking a release or return of the levied funds and damages, on the grounds that CNB and its attorneys had violated the automatic stay. On October 23, 1986 Judge Lisa Hill Fenning of this Court granted a preliminary injunction requiring CNB to return the levied funds, and CNB thereafter returned the funds to the debtors. The preliminary injunction also enjoined defendants from any further attempt to enforce the nondischargeability judgment without prior relief from the automatic stay.

The debtors have also named attorneys James P. Del Guercio and Barbara Stein as defendants. Del Guercio is the senior counsel for CNB and an executive vice president. He is the supervisor for Stein, who is an associate counsel for CNB.[2]

Debtors claim damages in the amount of $15,857.90 in consequence of the levy in violation of the automatic stay. Damages include mortgage late charges of $116.78 (because the levy prevented the timely payment of two mortgage payments), a lost fee deposit at UCLA of $300, lost interest of $59.42, and attorneys fees of $15,381.70. Plaintiffs also seek punitive damages in the amount of $1,000,000 against CNB, $13,872 against defendant Del Guercio, and $5,028.60 against defendant Stein.

## III. DISCUSSION

### A. Violation of the Automatic Stay

Bankruptcy Code § 362(a) provides:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities, of—
>
> .    .    .    .    .
>
> (6) Any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....

The automatic stay takes effect at the moment of filing of the bankruptcy petition. *In re Stucka,* 77 B.R. 777, 782 (Bankr.C.D. Cal.1987); *In re Davis,* 74 B.R. 406, 410 (Bankr.N.D.Ohio 1987); *Mewes v. Bankwest of South Dakota (In re Mewes),* 58

---

tion, but only at or promptly after the levy. Enforcement of a bankruptcy court judgment is provided in Rule 69 F.R.Civ.P., incorporated by reference in Bankruptcy Rule 7069, which states in relevant part:

> The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought....

The California Code of Civil Procedure §§ 699.-010 *et seq.* (West Supp.1987) provides the procedure for enforcement of judgments in California. Notice to the judgment debtor of a levy is required by section 700.010, which provides:

> (a) At the time of levy pursuant to this article or promptly thereafter, the levying officer shall serve a copy of the following on the judgment debtor:

> (1) The writ of execution.
> (2) A notice of levy.
> (3) If the judgment debtor is a natural person, a copy of the form listing exemptions prepared by the Judicial Council pursuant to subdivision (c) of Section 681.030.
> (b) Service under this section shall be made personally or by mail.

There is no evidence that the required notice was given by the levying officer in this case.

**2.** The status of Del Guercio and Stein is not altogether clear. Defendants have been represented throughout this litigation by "Law Offices of James P. Del Guercio," indicating that Del Guercio is in private practice. The address and telephone number for his "law offices," however, appears to be that of the legal department of CNB. If Del Guercio is in-house counsel at CNB, and not in private practice, this designation of counsel is false and misleading.

B.R. 124, 127 (Bankr.D.S.D.1986). It is one of the fundamental debtor protections provided by the Bankruptcy Code. It stops all collection efforts, all foreclosure actions, and all harassment against a debtor. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296. Any violation of the automatic stay is treated seriously by a bankruptcy court.

Thirteen exceptions to the automatic stay are provided in Bankruptcy Code § 362(b), 11 U.S.C. § 362(b) (1979 & Supp.1987). CNB does not claim the benefit of any of these exceptions, and none appears to be applicable.

Termination of the automatic stay by operation of law is provided in Bankruptcy Code § 362(c), 11 U.S.C. § 362(c) (1979 & Supp.1987), which states:

Except as provided in subsection (d), (e) and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under Chapter 7 of this title concerning an individual ... the time a discharge is granted or denied.

Subsections (d), (e) and (f) are the relief from stay provisions of section 362. Because CNB has not sought relief from stay, it cannot take advantage of this exception. Subsection 362(c)(1) is not applicable, because CNB is not proceeding against property removed from the estate. Thus any justification for CNB's actions must rest on subsection 362(c)(2).

Subsection 362(c)(2) is the subsection that normally governs the termination of the automatic stay in a Chapter 7 case. Under this provision the stay terminates at the earliest of the following: (1) the closing of the case; (2) the dismissal of the case; (3) the grant or denial of a discharge. The first two alternatives apply only where a debtor aborts a Chapter 7 case. For a debtor who pursues the Chapter 7 case to conclusion, the automatic stay continues until the grant or denial of discharge.

■ CNB argues that its nondischargeability judgment constitutes a denial of discharge under section 362(c)(2)(C) as to the debt owing to it. This argument misinterprets section 362(c)(2). The discharge that terminates the automatic stay in a Chapter 7 case is the discharge provided by Bankruptcy Code § 727(a), 11 U.S.C. § 727 (1979 & Supp.1987).[3] A nondischargeability judgment, in contrast, does not terminate the automatic stay: the stay continues until a discharge is granted or denied.

Section 362(c) conspicuously lacks any automatic termination of the automatic stay for a judgment creditor of a nondischargeability judgment. The only automatic termination is provided in subsection 362(c)(1), where property has ceased to be property of the estate, such as by sale or foreclosure. All other creditors continue to be subject to the automatic stay until it lifts under subsection 362(c)(2), or until a court awards relief from stay.

CNB further argues that Rule 62(a)[4] of the Federal Rules of Civil Procedure and Bankruptcy Rule 7062[5] permit enforce-

---

**3.** For Chapter 9 cases, the discharge is provided in Bankruptcy Code § 944, 11 U.S.C. § 944 (1979); for Chapter 11 cases, the discharge is provided in Bankruptcy Code § 1141, 11 U.S.C. § 1141 (1979 & Supp.1987); for Chapter 12 cases, the discharge is provided in Bankruptcy Code § 1228, 11 U.S.C. § 1228 (Supp.1987); for Chapter 13 cases, the discharge is provided in Bankruptcy Code § 1328, 11 U.S.C. § 1328 (1979).

**4.** Rule 62(a) F.R.Civ.P. provides in relevant part:

Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.

CNB correctly points out that this rule contains no impediment to the enforcement of its judgment.

**5.** Bankruptcy Rule 7062 provides:

Rule 62 F.R.Civ.P. applies in adversary proceedings except that an order granting relief from an automatic stay provided by § 362,

ment of a nondischargeability judgment after ten days where no appeal has been taken. However, neither of these rules provides relief from the automatic stay. Consequently they provide no benefit to CNB in this case. The automatic stay is a separate and independent limitation on CNB's collection efforts.

Analysis of the nature of a nondischargeability judgment supports this result. A nondischargeability judgment has two essential components: (1) a determination of the amount of the debt; (2) a declaratory judgment that the debt is not subject to discharge.

Although procedurally different, the first component is functionally the same as the claims resolution procedure: it determines the amount of the debt in question. Like the claims process, this determination is an essential feature of the bankruptcy process, and is not subject to the automatic stay. However, once the amount of the debt is determined, the bankruptcy process only provides for the payment of the debt out of the assets of the estate (and only if the assets are sufficient to pay claims of the creditor's class). As in the claims process, there is no relief from the automatic stay once the amount of the debt is determined.

The second component of a nondischargeability judgment does invoke relief from stay, but only when the declaratory judgment takes effect. A declaratory judgment that a debt is not subject to discharge has no effect until the discharge is entered. Prior to that time, it is like an engine that is idling. The discharge puts the declaratory judgment into gear, and gives it effect. This is exactly the time that section 362(c)(2)(C) terminates the automatic stay.

The automatic stay is replaced by the permanent injunction of Bankruptcy Code § 524(a), 11 U.S.C. § 542(a) (Supp.1987), for all dischargeable debts. A nondischargeability judgment creditor is relieved of all restraints against enforcing his or her

judgment at the same time. Thus the discharge, and the consequent lifting of the automatic stay, is the event that permits a nondischargeability judgment creditor to proceed with enforcement of the judgment.

A declaratory judgment of nondischargeability is not put into gear by the denial of a discharge. Instead, the denial of a discharge renders moot the declaratory relief feature of the nondischargeability judgment. For this reason a court will normally not consider a dischargeability adversary proceeding brought under section 523 until it resolves any dispute as to a debtor's entitlement to a discharge under Bankruptcy Code § 727, 11 U.S.C. § 727 (1979 & Supp.1987). If a discharge is denied, a declaratory judgment of nondischargeability under section 523 is a waste of time, effort and expense for both the parties and the Court.

CNB's violation of the automatic stay was not inadvertent or based on ignorance of the filing of this bankruptcy case. CNB was fully aware of the automatic stay, because it had litigated its nondischargeability claim in this Court. If it did not know that debtors' discharge had not yet been granted or denied, this ignorance was self-inflicted: it could easily have learned the facts from the court docket. It proceeded deliberately to collect its judgment, with full knowledge of the pendency of the case. The Court finds that its actions were willful, deliberate and intentional, and not inadvertent.

**B. Individual Liability of Attorneys**

■ The debtors assert that Del Guercio and Stein, CNB's in-house counsel, should be held jointly and severally liable with the corporate defendant for compensatory damages, and that punitive damages should be imposed individually against them.

The undisputed facts show that, while Stein did obtain the first writ of execution, she did not obtain the second writ of execution that gives rise to this adversary proceeding or cause the subsequent levy.

§ 922, or § 1301 of the Code, an order authorizing or prohibiting the use of cash collateral or property of the estate under § 363, and an order authorizing the trustee to obtain credit

pursuant to § 364 shall be additional exceptions to Rule 62(a).
The exceptions stated in this rule do not apply to CNB.

Stein was absent from the office on maternity leave when the writ was obtained and levied. The undisputed evidence further shows that Del Guercio was also not directly responsible for levying the writ, and his only alleged role in this case was supervisory. While there may be an attorney at CNB who is responsible for the automatic stay violation in this case, there is no evidence before the Court that either Del Guercio or Stein was that attorney.

The Court therefore finds that Stein and Del Guercio are not liable for CNB's violation of the automatic stay.

### C. Damages

Debtors argue that they are entitled to damages under Bankruptcy Code § 362(h), which states in part:

> An individual injured by any willful violation of a stay shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

However, section 362(h) applies only to cases filed after its effective date, October 8, 1984. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 553, *reprinted in* 1984 U.S.Code Cong. & Admin.News (98 Stat.) 392. While this adversary proceeding was filed after October 8, 1984, the bankruptcy case was filed on October 26, 1983. Section 362(h) was not in effect at that time, and is not applicable to this case.

Prior to the enactment of section 362(h), parties aggrieved by a violation of the automatic stay ordinarily invoked the remedy of civil contempt. However, the Ninth Circuit has recently determined that bankruptcy courts do not have civil contempt power, at least where such power is exercised to imprison a party. *Plastiras v. Idell* (*In re Sequoia Auto Brokers, Ltd.*), 827 F.2d 1281, 1284–85 (9th Cir.1987). In dictum the Ninth Circuit took the further view that bankruptcy courts have no contempt power of any kind. *Id.*, 827 F.2d at 1290.

Entirely apart from the contempt power, bankruptcy courts have specific authority to award damages for violation of the automatic stay. *Brock v. Barlow* (*In re Brock*), 58 B.R. 797, 809 (Bankr.S.D. Ohio 1986); *Willis v. Parks Chevrolet, Inc.* (*In re Willis*), 34 B.R. 451, 454 (Bankr. M.D.N.C.1983); *Cusanno v. Fidelity Bank* (*In re Cusanno*), 17 B.R. 879, 882 (Bankr. E.D.Pa.1982) (power to award reasonable costs based on Bankruptcy Code § 105(a)). This power permits the Court to award damages against CNB in this case.

The Court holds that compensatory damages are necessary for the Watsons to be repaid for their actual losses and their necessary legal fees because of CNB's willful violation of the automatic stay. The Court awards $15,857.90 in actual damages. This amount represents the actual damages sustained by the debtors as a direct and proximate result of the wrongful levy. The Court finds that each element of compensatory damages is sufficiently supported and is justified.

The Court finds that this is not a proper case for the imposition of sanctions beyond the damages and attorneys fees awarded to the debtors. The parties have cited no reported cases, and the Court's independent investigation has discovered none, holding that the enforcement of a pre-petition debt violates the automatic stay, where the enforcement is pursuant to a nondischargeability judgment entered by the bankruptcy court. Normally a discharge is entered (or denied) prior to the entry of judgment on a non-dischargeability claim,[6] and this issue does not arise. Because of the lack of prior case law on this point, which would have put CNB on notice that its execution on its nondischargeability judgment violated the automatic stay, additional sanctions are not appropriate. For the same reasons, the Court denies plaintiffs' request to certify a recommendation to the district court for criminal contempt.

---

**6.** There is no apparent reason in this case for the delay in entry of the debtors' discharge in a case that is now five years old.

### D. Setoff

 Debtors raise an additional concern, that CNB will refuse to pay the sanctions awarded by the Court, on the grounds that the sanctions are subject to offset against the nondischargeable debt. CNB has no justification for such a position.

Setoff is permitted only for debts that satisfy the test of mutuality. "To be mutual, the debts or credits must be in the same right and between the same parties, standing in the same capacity." 4 *Collier on Bankruptcy* 867 (14th ed. 1978).

A pre-petition debt and a post-petition credit present a classic case of lack of mutuality. "To be eligible for setoff, both the mutual claim of the creditor and the debt of the debtor must have arisen prior to the commencement of the case." 4 *Collier on Bankruptcy* ¶ 553.08[1] (15th ed. 1987); *accord, In re Ward,* 41 B.R. 247, 248 (Bankr.M.D.Tenn.1984); *In re Garcia,* 23 B.R. 266, 268 (N.D.Ill.1982). If the debtors had opened a post-petition bank account at CNB, CNB would have been prohibited from applying any deposits against the post-petition debt. *In re Garcia, supra,* 23 B.R. at 267–68; *Nelson v. First National Bank & Trust (In re Nelson),* 6 B.R. 248, 250 (Bankr.D.Kan.1980). Post-petition sanctions likewise may not be set off against a pre-petition debt, even where the debt is nondischargeable.

### IV. CONCLUSION

The Court concludes that CNB violated the automatic stay in this case when it proceeded to enforce its nondischargeability judgment against the debtors without obtaining relief from the automatic stay, and without waiting for termination of the stay by operation of law. In consequence, the Court awards to the debtors actual damages in the amount of $476.20, plus their attorneys fees in the amount of $15,-381.70 in bringing this adversary proceeding, for a total of $15,857.90. However, the Court declines to award any further sanctions against CNB, because of the lack of prior case law to give CNB notice that its actions violated the automatic stay.

The Court grants summary judgment in favor of the defendant attorneys for lack of evidence of personal responsibility for the automatic stay violation.

The foregoing constitutes the Court's findings of fact and conclusions of law.