# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3356

IN RE:
MEYER MEDICAL PHYSICIANS GROUP, LTD.,

*Debtor-Appellant*,

v.

HEALTH CARE SERVICE CORPORATION
d/b/a HMO ILLINOIS,

*Creditor-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 1479—**Harry D. Leinenweber**, *Judge.*

———————

ARGUED FEBRUARY 12, 2004—DECIDED SEPTEMBER 23, 2004

———————

Before CUDAHY, COFFEY, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* After Meyer Medical Physicians Group, Ltd. ("Meyer") filed a voluntary petition for relief under Chapter 11, the bankruptcy court granted a motion by a creditor, Health Care Service Corporation d/b/a HMO Illinois ("HCSC"), to effectuate a setoff of approximately $1.3 million against amounts owed by Meyer. The district court affirmed the bankruptcy court's discretionary decision, and Meyer appeals. We affirm.

In November 2000 Meyer and HCSC entered into a Medical Services Agreement ("MSA"), under which Meyer would provide physician services to HCSC enrollees for a set monthly prepayment, and Meyer would pay for services provided by third-party specialists. When Meyer fell behind in those payments, HCSC agreed in January 2001 to amend ("January Amendment") the MSA to loan Meyer up to $2 million for Meyer to pay outstanding claims. In return, Meyer agreed to repay the loan in monthly installments of $100,000 beginning in March.

In December 2001, the parties again amended the MSA ("December Amendment"). In the December Amendment, Meyer acknowledged that it owed HCSC over $4.5 million, including debts from previous MSAs, and agreed to repay this amount in monthly installments of $200,000. Five months later, Meyer filed its Chapter 11 petition. By this time, Meyer had repaid HCSC at least $1.5 million.

In June 2002, HCSC moved to modify the automatic stay under 11 U.S.C. § 553(a) of the Bankruptcy Code to setoff the $1.3 million it owed Meyer for services rendered in 2001 under the MSA against Meyer's total debt. Section 553(a) states that, subject to several exceptions, a creditor may offset a mutual debt—owed by the creditor to the debtor, and the debtor to the creditor—that arose before the commencement of the case. *See* 11 U.S.C. § 553(a). In February 2003, the bankruptcy court granted the stay, finding that the obligations between the parties were mutual and that principles of equity did not foreclose a setoff. The district court affirmed the bankruptcy court's decision.

The allowance of a setoff is a decision that lies within the sound discretion of the bankruptcy court. *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 289 (6th Cir. 2001); *In re The Bennett Funding Group, Inc.*, 146 F.3d 136, 140 (2d Cir. 1998). The decision to grant relief from the automatic stay and allow a setoff under § 553(a) of the Bankruptcy Code is

reviewed for abuse of discretion. *See Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003); *The Bennett Funding Group, Inc.*, 146 F.3d at 138*; In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998); *In re The Sec. Group 1980*, 74 F.3d 1103, 1114 (11th Cir. 1996).

On appeal, Meyer asserts that any setoff is impermissible because the obligations owed by the parties are not mutual for purposes of § 553(a). In order for debts to be mutual, Meyer notes, they must be held by the same parties in the same capacity. Meyer contends that mutuality does not exist here, however, because the obligations are owed in different capacities: with respect to HCSC's debt to Meyer, the parties were acting as reimburser and provider, respectively, whereas with respect to Meyer's debt to HCSC, the parties were borrower and lender.

"Mutuality is satisfied when the offsetting obligations are held by the same parties in the same capacity (that is, as obligor and obligee) and are valid and enforceable, and . . . both offsetting obligations arise either prepetition or post-petition, even if they arose at different times out of different transactions." *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 955 (7th Cir. 2003). Mutuality requires that the debt in question be owed in the same right and between the same parties standing in the same capacity, *see id.*; *In re Stall*, 125 B.R. 754, 757 (Bankr. S.D. Ohio 1991); moreover, the character of the debt does not affect mutuality, *Stall*, 125 B.R. at 757 (mutuality satisfied and bankruptcy court allowed a setoff of repayment of student loans due to the federal government against income tax refunds due to the debtor); *see In re Marshall*, 240 B.R. 302, 304 (Bankr. S.D. Ill. 1999).

Meyer and HCSC held mutual obligations in the same capacity, as obligor and obligee. Meyer determined that it owed HCSC $4.5 million for previous MSAs, and HCSC determined that it owed Meyer approximately $1.3 million

for services rendered in 2001 under the MSA. Whether or not the debt arose from different transactions does not affect HCSC's right to a setoff because the debt was in the same right and same capacity. *See Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d at 955; *Stall*, 125 B.R. at 757. The bankruptcy court correctly concluded that even though HCSC acted as a provider for one obligation and a lender for the other, mutuality was still present because both parties were an obligor and obligee. *See Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d at 955; *Stall*, 125 B.R. at 757, *see Marshall*, 240 B.R. at 304. Furthermore, the character of the debt did not affect the mutuality. *Stall*, 125 B.R. at 757.

Meyer further asserts that the January Amendment created a tripartite relationship between HCSC, Meyer, and pre-2001 claims ("Specialists' Claims") by HCSC advancing funds to Meyer so it could pay the Specialists' Claims. If this were a tripartite relationship, the debt would be owed between the three different parties, and HCSC would not be allowed to setoff its debt because tripartite relationships do not meet the mutuality requirement of § 553(a). *See In re Lakeside Cmty. Hosp., Inc.*, 151 B.R. 887, 892-93 (Bankr. N.D. Ill. 1993). But we agree with the district court that the January Amendment did not contain any language restricting Meyer's use of the loan to pay its Specialists' Claims, and furthermore, the record does not support Meyer's characterization of its obligation to HCSC as part of a tripartite relationship—Meyer and HCSC are the only two parties involved in this case.

As a last effort, Meyer asserts that equitable principles should prevent HCSC from receiving the setoff, because HCSC intentionally agreed to loan Meyer millions of dollars once it learned that Meyer was going to file for bankruptcy in order to protect itself by creating a setoff right under § 553(a). But there is no factual basis for this whatsoever in the record. As the district court properly noted, "courts generally frown on denying setoff when a bank or other cre-

ditor injects funds into a struggling entity, as this 'would precipitate bankruptcy,'" *In re Meyer Med. Physician's Group, Ltd. v. Health Care Serv. Corp.*, No. 03 C 1479, 2003 WL 21960350, at *3 (N.D. Ill. Aug. 15, 2003) (quoting *Studley v. Boylston Nat'l Bank of Boston*, 229 U.S. 523, 529 (1913)), and inferred that HCSC was merely injecting cash into the situation to attempt to keep the venture afloat. Furthermore, a setoff will not be denied simply because creditors will not be treated equally. *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998). Therefore, equitable considerations do not preclude a setoff.

Because we conclude that the district court properly affirmed the bankruptcy court's decision to allow HCSC to exercise its right of setoff under § 553(a) of the Bankruptcy Code, we decline to reach the issue of recoupment.

AFFIRMED.


A true Copy:

      Teste:


               _____
               *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*